18-1503 U.S. v. Valentini Attorney Kretzner Good morning, may it please the court, Seth Kretzner for the appellant. With your permission, Judge Lynch, I would like to reserve four minutes for rebuttal. Yes, you may have it. As used under the Hobbs Act, the term obtaining of property is impacted with a positively elegant simplicity, that which the Supreme Court said in CCAR, and I quote, proof that the victim parted with his property and the extortionist gained possession of it. Now, throughout the history of the Hobbs Act, there has been this question, or at least more contemporary litigation of the Hobbs Act, this question of what, if anything, by way of reciprocation has to occur in order for that phrase obtaining to be satisfied. In the Green case from the 1950s, the Supreme Court used the phrase direct benefit. Over the course of more recent litigation, particularly at least two cases that have come down from this circuit just this year, the question has turned to whether or not there has to be any sort of personal benefit. The first of those cases is Brissette, which issued in March of this year, and then second was a case that I'm sure I'll mispronounce. I'll call it the Tallahassee case. Tallahassee, we use the name. Yes, I noticed it, so I wrote the opinion. So the case that issued in June after I filed my opening brief. And it seems to me that having read both of these cases somewhat carefully, there's a little bit of a tension between the holding in the case that issued in June as well as in the Brissette case. In Brissette, and I'm thinking particularly of Part 3B, this is the paragraph that begins in addition and then proceeds to list a nomenclature of other cases upon which that opinion, reversing and remanding the granting of a motion to dismiss the indictment, lists several other cases where, for example, the Vigil case from the Tett circuit where there the benefit wasn't given directly to that person or somebody who's choosing. Can I just back you up? Yes, please. This is memorable because I've never heard of the Hobbs Act being referred to as elegant before. We'll go back. Okay. So I understand the argument, but what is it in service of? Is it in service of your notion that the evidence was simply not sufficient? Correct, yes. Okay. Ben, could you tie that to the facts of the case? Yes, absolutely, Judge Lynch. The facts of this case don't begin with count one, the conspiracy count. I think even my opposing counsel would probably agree with me this was a somewhat thin case in terms of conspiracy. In other words, in September, these two other gentlemen went to see Mr. Morell and announced that they were going to extort him, going all the way back to some money they said he owed in arrears back to one Mr. Al Bruno in 2001, so more than a decade earlier, and then he was later murdered. Weeks later in October, so a different month entirely, my client went along with those two other gentlemen to the rural property of this Mr. Morell. I reproduced in my brief the relevant portions of the intercept in between. I left out the meeting in September and then the one in October. Mr. Morell went to the state police and they were able to not wire him but record the conversation in some way. I'm still trying to understand, respectfully, where you're going. It sounds like suddenly you've shifted to this mere presence argument. Can you get back? What are you arguing about the lack of evidence that would allow the government to establish the obtained element of the Hobbs Act? Yes, Judge, my arguments as to insufficient evidence are multifaceted. The first one I would call the general conspiracy principles, just to lay the factual backdrop, and then more directly that there was no extortion as a legal matter as established in this case. Partly the trial evidence that reflects the fact that none of the co-conspirators were called to testify at trial. So the only testimony he had was from these various law enforcement officers and then from Mr. Morell, but no one heard or interacted directly with my client. I'm afraid I'm lost too. Can we go back to what you think the lack of evidence is as to the obtaining element? Yes, two facts. One, my first conclusion that the evidence was insufficient as to obtaining that clause of the Hobbs Act. First, no money ever went into my client's hands. In other words, he was not there for any of these other meetings. There's no evidence that any of the money from the state police that Mr. Morell So why does that matter? Well, one of them is that there was no, we'd argue, benefit of any kind, certainly not direct benefit. But then we get into this question, what I would talk about under the precept, whether or not there could be an incorrect benefit. And I take the position that because no one testified that my client was involved with any of the accolade or payments, there's no way to show that he even had an indirect benefit. In other words, there was no money that went to him personally and no money that he was Do your arguments depend on your assertion that there was no conspiracy? Let me turn it around. If you agree he conspired with other members of this mob in Springfield and the mob itself got extortion payments from the victim, that the obtaining element has been met? Perhaps as to the conspiracy count, but no as to the underlying count. I'm not conceding the evidence was sufficient as to the conspiracy count. We would argue that even if there was evidence of conspiratorial agreement, there was still not agreement to do what? There was still not agreement to conspire. Even a further step removed outside of the principles of conspiracy would be the underlying count. All right. Let's go back. All right. So let's put conspiracy aside. And you're saying he can't be convicted of a direct Hobbs Act violation because he did not personally receive the payment of money? Well, that's one part of the argument. The next part is, or did he receive any benefit, incidental or otherwise? And so why was he there if he wasn't going to benefit from extorting money from this guy? And why can't a jury reasonably conclude that of course he was getting some benefit out of it? I would argue, Judge Lynch, that a jury could not reasonably conclude, based on the trial evidence in this case, that because his own statements, as I reproduced in the brief, we'd argue is just gibberish, and no one else came to the trial, no other witness was called to interact with him to explain what his thoughts might be as he went to that meeting. But that doesn't sound like an attack on the obtaining of property. That sounds like an attack on the sufficiency of evidence of the conspiracy charge. Yes, that's correct. You're saying the government did not sufficiently prove the conspiracy. But that argument, insofar as I can tell, wasn't made in the district court, hasn't been preserved on appeal, isn't made with any degree of clarity in your brief. So why are we spending time on it? Well, Judge Lynch, I think that in Roman numeral one, my first point of appellate error was insufficient evidence of conspiracy. For Roman numeral two, I said in my clause that Roman numeral two, germane to both counts, insufficient evidence of extortion. So that applied both to conspiracy and to the underlying count. I know my opposing counsel does raise a waiver argument, which I'll address in another case called Morell, not Mr. Morell in this case. But I don't think even my opposing counsel concedes in his brief that there was this challenge as to mere presence, those sort of principles made in the Rule 29. I understand where mere presence are. Sure. Okay. I thought you said, Judge Sully, that you thought I didn't make such an argument. Okay. Certainly, let me turn briefly to the waiver argument, if I may. I understand Rule 29 objections can be oral motions, can be somewhat different from overwritten motions, can be somewhat problematic in that they're allowed, perhaps unusually in federal criminal practice, to be made more generally and specifically. I don't think even my opposing counsel would contend there was not, such as was Rule 29 arguments made in this case, that the chart on which they seek to hoist Mr. Valentini is that his attorney, at the end of the trial, after the jury had gone out, when they had this bail hearing, said, Judge, please refer to the arguments I made in my closing argument. Now, to be in all candor, that was not a terribly contested bail hearing because it's a mandatory detention case. I give my predecessor credit for trying. But I don't think there's any case that has said if one attorney happens to walk into almost an oral trial of, you know, please refer to my closing argument. Certainly, it was not like that judge remembered every word that was said in closing. It wasn't like they were using a chart at some sort of post-verdict Rule 29 motion. Look, we can look at the procedural record on this waiver issue. But I'm going to go back not to the conspiracy but to the direct claim of violation of the Hobbs Act. And I said to you, why can't a jury reasonably infer that if he's at the meetings and he's hanging out with the gang members, that, yeah, he got some benefit out of this? Your reply to me was what he said at the meeting was gibberish. I'm not sure what that has to do with anything. But do you have a different argument than the gibberish argument? Yes. First, Judge Lynch, in your question to me, you first used the plural meetings and then you used the singular meeting. My client, to be clear, was only at the one meeting. No, he was only at the one meeting with the victim. But he was certainly at other meetings with the gang members, including one right after the victim goes to confront the gang. And even then, Judge Lynch, the testimony was very clear, reproduced in my brief, the agents who saw those gentlemen eating lunch together, mere social interaction, would testify they had no idea what they were talking about. We would argue that he had cheated. And the jury could not rationally conclude that they were talking about this extortion of this victim? No, I don't think so. I think agents simply saying we saw men eating lunch together. Given the timing of it? Even then, unless somebody at that meeting said what we were talking about, that would allow the government to convict anybody based on mere association. Counsel, but this October 4th meeting, you say it was all gibberish, but it seems to me that a jury could reasonably infer from what he said that he understood the events that had preceded the October 4th meeting. He could understand what was going to come. I mean, his comments, however you characterize them, certainly permit, I would suggest, permit that inference. He knew what happened before, and he knew what was going to happen in the future. Perhaps so. Even if that showed agreement, the question of what agreement to do what? And if you accept my premise that the evidence is not legally sufficient to show extortion under the Hobbs Act, then at least the underlying conviction outside the conspiracy principles, we would contend would have to fall for insufficient evidence. Your client basically says, you need protection? I'll give you protection. And your client is a huge guy who is brought along for a purpose. So, again, I don't understand the insufficiency of the evidence argument. If I may just respond briefly. Certainly, my client is huge. There's pictures of him in the record. He's an extraordinarily large man. But I don't know that a personal characteristic about which one has no control, the simple fact of being huge, is enough to involve them or suscept them to criminal liability. Maybe that's why most evidence suffices. These other things you've brought out. You have reserved some time. Thank you. Thank you. Mr. Quinlivan. Judge Lynch, and may it please the Court, Mark Quinlivan on behalf of the United States. Let me begin with the sufficiency claim. And then I'll turn to the obtaining of property, which I understood from my friend's brief to be a strictly legal argument. But this was, on the sufficiency, this was far from a thin case, nor were the defendant's comments during the October 4th meeting mere gibberish. At the very outset of the meeting, Mr. Morell complains that he had been treated well by Al Bruno in the past, and I get smacked by this guy. And what does the defendant say? He says, relax. Whatever happens, relax. You're going to get treated just as good as Al treated you. So from that statement alone, a rational jury could conclude that the defendant, A, understood and knew of the arrangement between Al Bruno's crew and Mr. Morell in the early 2000s, B, understood and what had happened four days earlier with the meeting between Mr. Santaniello, Mr. Calabrese, and Mr. Morell, and third, that he was promising that if the payments were made, he was going forward, was going to be treated just as well as Bruno had treated him previously. The conversation then goes on, and what does the defendant say? He says twice, you're never going to have a problem with anybody. And when Mr. Calabrese says, if anyone else with you, give us a call, the defendant says, and it will end. I guarantee it, it will end. And he also then says, the only time you've got to talk to us is if you have a problem with somebody. So again, what a rational jury easily could conclude from those statements, that what the defendant was doing was promising that if these payments were made, the new crew would provide protection to Mr. Morell. And I think it is significant that he doesn't say, if you have a problem, contact them. He says, if you have a problem, the only time you need to contact us is if you have a problem. And then as the conversation continues to ensue, what do they talk about? They talk about the payment of $5,000 that will be made the following Wednesday. And in the course of that conversation, in addition to noting that Mr. Morell should relax, the defendant repeatedly says, well, what happens if you can't make it on Wednesday? Why don't we do it on Friday instead? But Mr. Morell says he can make it on Friday, the conversation ends, and what does Mr. Calabrese say? He says, after the defendant introduces himself as Ritchie, Mr. Calabrese says, either I or Ritchie will be here the next day. So now Mr. Calabrese is aligning the defendant in the conspiracy. So based on the comments during the October 4th meeting alone, there was more than sufficient evidence for a rational jury to conclude that the defendant was, in our view, a full-fledged member of this conspiracy. There was additional evidence that Your Honors have noted. The meeting the following week, when Mr. Morell doesn't have the full $5,000 and Mr. Santinelli shows back up, Mr. Calabrese says, me and my friend, we tried to make you comfortable.  As Judge Lynch noted, when they have the meeting at Mr. DiPagola's residence and Mr. Santiniello and Calabrese show up unexpected, 20 minutes after that meeting ends, their car is seen in the parking lot of a restaurant and the defendant is seen at a table with the three other men. And in a subsequent meeting at Mr. DiPagola's place of business, after Mr. Morell leaves, within minutes, the defendant shows up and meets briefly with Mr. DiPagola. Now that's all circumstance. Would you turn to the obtaining points? Certainly. On that, Your Honor, I had thought that this was a strictly legal argument, that as a matter of law, focusing on the Bercow opinion as opposed to the Brissett opinion, that the obtaining of property element could not be established because there is no evidence that the defendant either received a direct benefit or an indirect benefit. I do think that to the extent there's any doubt on that question, this Court's decision in Tikalashvili resolves that. And as Judge Lynch noted, given, in our view, the overwhelming evidence that the defendant was a member of the conspiracy, even if an indirect benefit showing was required, which it isn't because Tikalashvili makes clear it can be a direction of money to a third party, but even if that were required, it would be established in this case.  So basically the Springfield mob is trying to get protection money, saying we'll help you get some government contracts. As I understand it, one of those contracts was with the state police for towing? That's right. And there was also discussion that they would obtain a contract with the Massachusetts State Turnpike as well. Okay. But the victim then goes to the state police? Yes. I believe the testimony was that it was his friend. I don't recall if he was a retired trooper or an active trooper who then put Mr. Morell in touch with an active-duty Massachusetts state trooper. It seems unlikely he would have gone to the state police if he thought there was any validity to the threat. And Judge Lynch, the only thing, I'm not sure the record is entirely clear. There was discussion at the outset of Mr. Morell's testimony about the various contracts that C.J.'s Towing had over the years and the fact, for example, that although he had been promised during Al Bruno's tenure that he would keep a particular contract and he eventually lost it, so his complaint was, I'm not getting any benefit. So the only thing I don't know is at this particular time in 2003 whether or not C.J.'s Towing had that particular contract. Yeah, because there was also evidence that he had City of Springfield and Springfield Police Department contracts at various times. Yes, as well as contracts with several automobile clubs and testimony as well that through all of these contracts they did daily business in other states. So there's no suggestion that these government agencies, in fact, were influenced by the Springfield mob as to whether they would give contracts or not. That's simply an assertion that's made to the victim here. Yeah, that's right. There's nothing that I recall in the evidence that supported that, Judge Lynch. All right, thank you. Thank you. Just to pick up on the very last exchange you had, I agree with my opposing counsel. There was no evidence in the record of any sort of public corruption or anything like that that does appear to be a piece of bragging that had happened by some people in the past with Mr. Morell. On rebuttal, I'd just like to point out what I think might be the next dimension perhaps to be addressed in the opinion in the Valentini case after the two opinions of this Court this year that we've already talked about, Brezet and Talashkavili. The potential area of conflict that I see, I mentioned earlier that portion of Section 3B of the Brezet case, that uttered to complete thought is at the bottom of page 10 and the top of page 11 of the Talashkavili case. I think the question is whether or not there was some surpluses there that this Court might see people attack in future cases or defendants attack on Rule 29 challenges or whether or not it was a mere ambiguity. I'm quoting directly, a defendant may obtain property within the meaning of the Hobbs Act by bringing about its transfer to a third party, regardless of whether the defendant received a personal benefit from the transfer. So I think the ambiguity or potential ambiguity is, is this strict liability may obtain under the Hobbs Act result when there's any transfer to a third party, full stop, period, no need to go further, or is there some degree of benefit qualified by that adjective personal, lesser than that, that still would not be able to predicate a Hobbs Act violation. If it's strict liability, any transfer to a third party, Velmon, is enough to establish liability if that's one thing. But if it is this qualification of a personal benefit, I would argue for Mr. Valentini whatever benefit he obtained in this case is something less than personal, perhaps even a tangible benefit, and there's a possibility that defendants like Mr. Valentini might be able to prevail on a sufficiency challenge, or at least the standards governing the outer limits of criminal liability in this context, and that we would submit is a potential area for the opinion to address, would argue Mr. Valentini's path forward, even if perhaps a narrow one on count two, how he would still be able to prevail in this case. In other words, if this court were to conclude that it's not completely strict liability, there's this small little bit of qualification left where some irreducible de minimis, if still there, benefit is not enough for criminal liability, that would be a path to reversing and rendering on count two. Thank you. Thank you.